IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NAAMA GOUTI, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO._____ |
| | § | |
| QOREBOARD, INC., MICHAEL | § | |
| MIDGETT, JR., and JEREMY JOHNSTON | § | |
| | § | |
| *Defendants*. | § | JURY REQUESTED |

## ORIGINAL COMPLAINT

1.　　The Fair Labor Standards Act not only prohibits an employer from discriminating in the payment of wages to its employees on the basis of sex, *see* 29 U.S.C. § 206(d), it also prohibits an employer from *retaliating against an employee who complains about such discrimination*. *See* 29 U.S.C. § 215(a)(3).  Here, Qoreboard, Inc. fired Naama "Emma" Gouti from her job as a junior software engineer because she had the audacity to complain to its two male leaders—Michael Midgett, Jr., the CEO, and Jeremy Johnston, the CTO—that she should be paid the same salary as an equivalent male junior software engineer.  The evidence is overwhelming that had she never complained about her unequal pay to them, she would not have been fired.  Accordingly, Gouti brings this action under the FLSA's anti-retaliation provision to recover damages for her lost wages, an additional equal amount as liquidated damages, emotional distress damages, punitive damages, and attorneys' fees.

A.　　**Jurisdiction and Venue**

2.　　This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.     Venue is proper in the Southern District of Texas because all, or a substantial part, of the acts and conduct charged herein occurred in this district.

**B.     The Parties**

4.     Emma Gouti is an individual residing in this District.  She is a covered employee of Defendants within the meaning of the FLSA.

5.     Qoreboard, Inc. is a foreign company with its principal office in Katy, Texas, and is a "person" as that term is defined in 29 U.S.C. 203(a).  Qoreboard may be served by personal service on its registered agent, Paracorp, Inc., 3610 N. Josey Lane, Suite 223, Carrolton, Texas 75007.

6.     Michael Midgett, Jr. is an individual residing in this District and is a "person" as that term is defined in 29 U.S.C. 203(a).  He may be served with citation at Qoreboard's offices located at 1526 Katy Gap Road, Suite 901, Katy, Texas 77494.

7.     Jeremy Johnston is an individual residing in this District and is a "person" as that term is defined in 29 U.S.C. 203(a).  He may be served with citation at Qoreboard's offices located at 1526 Katy Gap Road, Suite 901, Katy, Texas 77494.

**C.     Retaliation Allegations**

8.     Gouti began working as a junior software engineer at Qoreboard on May 14, 2019. She worked tremendously hard for the company and received much praise for her dedication and competence.

9.     At least she did before she complained to Midgett and Johnston, on June 7, that the company should not pay a male junior software engineer it was considering hiring more than it was paying her, and that, if it did pay him more than she was making, it should raise her salary a commensurate amount.  Even though Gouti argued that she would not feel "valued" unless

Qoreboard paid her the same amount it was planning to pay a male for doing the exact same work, Midgett and Johnston declined her request.

10.     On June 17, Midgett met with Gouti to discuss her complaint.  Midgett told her, "I'm not gonna lie, I was pissed when you came in and you said all this stuff about equal treatment."  He said that he didn't know why Johnston decided to pay the new male employee more and that the employee had "better prove" he was worth the extra money when he starts working, but that it was Johnston's decision.  Midgett also claimed that it just would not be "fair" if the company had to "go back" and raise existing employees' salaries every time it hired a new employee at a higher salary, and that Gouti only produced 1/6th of the value that the company paid her in any event.  Nevertheless, even though she was going to be making less than the new male developer, the company wanted her to know that she was "valued" and that it wanted her to continue working there (presumably if she would just shut up and stop complaining).

11.     But she did not stop complaining.  On June 24, she complained to another coworker, Allen Penkar, that if a woman doesn't know one tiny thing in a massive field, that would mean she's not "higher level" and would justify not paying her more.  That was apparently enough complaining, as Johnston and Midgett then decided to fire her.

12.     On June 26, Johnston told her that it "wasn't working out" because she was going to be asking for a raise in six months and she just didn't deserve one because she was "not capable of thinking at a higher level."

**D.     Cause of Action for Retaliation Under the FLSA**

13.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 12.

14.     The FLSA's anti-retaliation provision has been interpreted broadly.  It applies not just to current employees, but also to former employees as well. *Hodgson v. Charles Martin*

*Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir. 1972).

15.     And because of "the clear and unambiguous language" of the FLSA, which contains

the terms "any employee" and "any person" in its anti-retaliation provision, there is no requirement

that either party "be engaged in activities covered by the Act's wage and hour provisions in order

for the strictures against discriminatory discharge to be invoked." *Wirtz v. Ross Packaging*

*Company*, 367 F.2d 549, 550–551 (5th Cir. 1966); *see also Acosta v. Foreclosure Connection,*

*Inc*., 903 F.3d 1132, 1135-36 (10th Cir. 2018) (collecting cases and holding that the anti-retaliation

provisions of the FLSA apply to any person regardless of whether that person is an enterprise

engaged in commerce); *Arias v. Raimondo*, 860 F.3d 1185, 1191-92 (9th Cir. 2017) (observing

that "the difference in reach between FLSA's substantive economic provisions and its anti-

retaliation provision is unmistakable" and that "Congress clearly means to extend section

215(a)(3)'s reach beyond actual employers").  Thus, it is irrelevant, for example, whether Midgett

and Johnston are "employers" under the FLSA, or whether Qoreboard has more than $500,000 in

annual sales.  All that matters under the FLSA's anti-retaliation provision is that Defendants are

"persons"—which they clearly are—and that they "discharge[d] or in any other manner

discriminate[d] against any employee because such employee has filed any complaint. . . under or

related to" the FLSA. 29 U.S.C. 215(a)(3).

16.     "[C]ourts evaluate FLSA retaliation claims relying on circumstantial evidence

under the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct.

1817, 36 L.Ed.2d 668 (1973)." *Starnes v. Wallace*, 849 F.3d 627, 631 (5th Cir. 2017).   An

employee must first make a prima facie showing of: (1) participation in a protected activity under

the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the

adverse action. *Id*. at 631-32.  If she does, the burden then shifts to the defendants to articulate a

4

legitimate, nonretaliatory reason for the adverse action. *Id*. at 632.  If they do so, then the burden shifts back to the employee to identify evidence from which a jury could conclude that the defendants' proffered reason is a pretext for retaliation. *Id*.

17.     Gouti easily satisfies the first element because an oral complaint satisfies the statutory term "filed any complaint." *Kasten v. Saint–Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1334–35 (2011).  Moreover, when Gouti told Midgett and Johnston that she objected to Qoreboard paying a higher salary to a male it was considering hiring for the same position, a reasonable person would clearly have understood that as an assertion of rights protected by the FLSA—that she was objecting to Qoreboard paying a male employee more than it was paying her, "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *See* 29 U.S.C. § 206 (d)(1).

18.     There is no dispute that Gouti was terminated, so the second element is easily satisfied as well.  Nor is there any reasonable dispute as to the third element, because even though there is more evidence of pretext in this case than just the short amount of time between her complaint and her termination—less than three weeks—timing alone is sufficient for this part of the inquiry. *Clark County School District v. Breeden*, 121 S. Ct. 1508, 1511 (2001) (noting that "very close" temporal proximity between protected activity and allegedly retaliatory conduct is enough to make a prima facie showing of causation).

19.     Defendants will claim that Gouti was terminated because of poor performance.  But there is abundant evidence that that reason is pretextual.

20.     First, it is not true that the company believed that her performance was unsatisfactory.  As recently as June 6, 2019—the day before Gouti complained—Hannah Mitchell, one of her supervisors, told her that she was a "very capable programmer who lacks a lot of self

confidence"; that she believed that Gouti "bust[s] [her] ass everyday trying to be better"; that Gouti will "still succeed [sic] you just have to keep that motivation up"; that Mitchell "really like[d] having [her] on the team and working with you"; that "[e]very day you'll get better"; and that her performance was improving "[e]very day."

21.     Not only did Mitchell tell Gouti that her performance was satisfactory, so did Midgett.  On June 17, 2019—the week before she was fired—Midgett told her that even though he was "pissed" that she had said "all this stuff about equal treatment" and that she only produced "1/6th the value" of what she was paid, he nevertheless believed that she was "valued" and that the company wanted her to continue working there.  Midgett also told Gouti that he didn't think it would be "fair" if every time Qoreboard hired someone that they would have to "go back" and raise the salaries of existing employees.

22.     As the Fifth Circuit has repeatedly stated, the causal connection prong may be satisfied by reliance on a "chronology of events from which retaliation may plausibly be inferred." *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir.1997); *Mooney v. Lafayette Cty. Sch. Dist.*, 538 Fed. Appx. 447, 454 (5th Cir.2013).  The above facts, which are merely part of the applicable "chronology of events" in this case, are more than sufficient to establish causation.

23.     Finally, it should not be lost on the Court—or on Qoreboard for that matter—what the ultimate legal issue is in this case.  As the Fifth Circuit noted recently, "the big picture" is that the "ultimate question" in a retaliation case is "whether the defendant discriminated against the plaintiff because the plaintiff engaged in protected conduct." *Starnes*, 849 F.3d at 635 (internal quotation omitted).  That "ultimate question" can sometimes get lost when a "rigid, mechanized, or ritualistic" application of *McDonnel Douglas* is improperly employed. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577

(1978).

24.     Nor should it be lost what the "but for" standard of causation actually entails. Qoreboard apparently believes that "but for" means "sole cause"; that as long as it can point to any objectively valid reason for Gouti's termination—even if it was not the true reason—it has no liability.  In other words, Qoreboard's argument goes, if Gouti could have been fired for something else, then her FLSA complaint was not the "but for" cause.

25.     But the Fifth Circuit has held in the Title VII retaliation context that "'but for' cause is simply not synonymous with 'sole cause.'" *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 777 (5th Cir. 2009).  Thus, Gouti "need not have established that her protected activity was the sole factor motivating the termination, but the burden was on her to show that 'but for' the protected activity she would not have been" fired. *Collins v. Baptist Mem'l Geriatric Ctr*., 937 F.2d 190, 193 (5th Cir. 1991) (internal quotation marks omitted).  Stated differently, if the FLSA grievance was the "straw that broke the camel's back," then it was the "but for" cause of the decision. *See Burrage v. United States*, 571 U.S. 204, 211 (2014) (explaining in criminal context that "but for" cause exists where "incremental effect" of defendant's actions "was the straw that broke the camel's back"); EEOC Directive No. 915.004, EEOC Enforcement Guidance on Retaliation and Related Issues (Aug. 25, 2016), available at   https://www1.eeoc.gov/laws/guidance/retaliation-guidance.cfm.

26.     Here, it may be that Gouti was two hours late to work one day; or that, as a young female in a male-dominated industry working in her first professional job, she was racked with self-doubt about her job performance; or that she sometimes made a mistake in her work.  But the evidence is also overwhelming that none of those reasons were sufficient, either individually or collectively, to merit her termination *without the "incremental effect" of her complaint*.  We know

that must be true, *because all of those same reasons existed the week before her termination* when the CEO of the company told Gouti that she was nevertheless valued and that the company wanted to continue employing her.  No reasonable juror could find otherwise.

**E.**      **Jury Demand**

27.      Plaintiff hereby demands a trial by jury.

**F.**      **Prayer**

28.      Plaintiff respectfully requests that judgment be entered against Defendants, jointly and severally, awarding her:

    a.      lost wages;

    b.      an equal amount as liquidated damages;

    c.      mental anguish damages for the sleeplessness and anxiety she suffered as a result of Defendants' conduct, *see Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062 (5th Cir. 2016);

    d.      punitive damages, *see West v. City of Holly Springs, Miss.*, Cause No. 3:16CV79-MOM-RP, 2019 WL 2454066 *2 (N.D. Miss., June 12, 2019) (denying defendant's motion to dismiss punitive damages claim in FLSA case); *see also Shea v. Galaxie Lumber & Const. Co.*, 152 F.3d 729, 734 (7th Cir. 1998) (holding that punitive damages available in FLSA retaliation cases);

    e.       reasonable attorneys' fees, costs, and expenses of this action as provided by the FLSA; and

    f.      such other and further relief as may be required by law.

Respectfully submitted,

STURM LAW, PLLC

*/s/ Charles A. Sturm*
CHARLES A. STURM
csturm@sturmlegal.com
*Attorney in Charge*
Texas Bar No. 24003020
Federal Bar No. 21777
723 Main Street, Suite 330
Houston, Texas 77002
(713) 955-1800 [Telephone]
(713) 955-1078 [Facsimile]



9